**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-00076-CMA-KLM

RICARDO LOPEZ, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

NEXT GENERATION CONSTRUCTION & ENVIRONMENTAL, LLC, a Colorado limited liability company, and
CAMRON LENTE,

    Defendants.

---

**ORDER GRANTING DEFENDANT CAMRON LENTE'S MOTION TO DISMISS**

---

This matter comes before the Court on Defendant Camron Lente's Motion to Dismiss (Doc. # 31) the claims asserted against him in Plaintiff Ricardo Lopez's complaint (Doc. # 18) pursuant to Fed. R. Civ. R. 12(b)(6). For the following reasons, the Court grants the motion and dismisses the claims against Lente without prejudice.

    I.    <u>Standards Governing Motions to Dismiss</u>

The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the

relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

## II.  Relevant Background

Plaintiff, Ricardo Lopez, a past employee for Next Generation Construction & Environmental, LLC (Next Generation), contends that he and others similarly-situated were not compensated for overtime hours, provided mandatory rest breaks, or compensated for meal breaks while working for Next Generation. As pertinent here, he has therefore filed claims against Lente,[1] Next Generation's founder and Chief Executive Officer (CEO), alleging violations of the Colorado Wage Claim Act, Colorado

---

[1] Lopez also brings claims against Next Generation, but this Order does not concern those claims because Lente's motion to dismiss only requests dismissal of Lopez's claims against him personally.

Minimum Wage Act, and Fair Labor Standards Act (FLSA). Lente argues that these claims should be dismissed under Rule 12(b)(6) because Lopez does not allege sufficient facts to pierce Next Generation's corporate veil and hold Lente personally liable. Lopez's response requests that the Court permit him to amend his complaint.[2]

The Court addresses the sufficiency of Lopez's state and federal claims below.

III.     The Colorado Wage Claim Act and Colorado Minimum Wage Act Claims

Colo. Rev. Stat. § 7-80-107(1) provides that Colorado's common law principles for piecing the corporate veil apply to "any case in which a party seeks to hold the members of a limited liability company personally responsible for the alleged improper actions of the limited liability company." *See Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263, 268 (Colo. 2013).

Next Generation is a limited liability company, and Lopez seeks to hold Lente personally liable for the actions of the company. The Court therefore applies Colorado's common law corporate veil principles here.

In general, a corporation is treated as a legal entity separate from its shareholders, officers, and directors. *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 73 (Colo. App. 2009). The fiction of the corporate veil isolates "the actions, profits, and debts of the corporation from the individuals who invest in and run the entity." *In re Phillips*, 139 P.3d 639, 643 (Colo. 2006). Only extraordinary circumstances justify

---

[2] In his response to Lente's motion to dismiss, Lopez urges the Court to permit him to amend his complaint, rather than dismiss his claims against Lente. To the extent Lopez would like to amend his complaint to include additional factual allegations against Lente, he must file a motion pursuant to Fed. R. Civ. P. 15. Any such motion must comply with all applicable rules, including D.C.COLO.LCivR 7.1(d). Simply inserting a request to amend in his response to a motion to dismiss is inadequate.

disregarding the corporate entity to impose personal liability. *Id.* at 644; *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). The paramount goal of piercing the corporate veil is to achieve an equitable result. *Phillips*, 139 P.3d at 644; *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1004 (Colo. 1998).

To determine whether it is appropriate to pierce the corporate veil, courts undertake a three-part inquiry. *Phillips*, 139 P.3d at 644; *Micciche v. Billings*, 727 P.2d 367, 372–73 (Colo. 1986). First, the court must determine whether the corporate entity is the "alter ego" of the person at issue. *Phillips*, 139 P.3d at 644; *Fink v. Montgomery Elevator Co.*, 161 Colo. 342, 350, 421 P.2d 735, 739 (1966). Courts consider a variety of factors in determining status as an alter ego, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for non-corporate purposes. *Phillips*, 139 P.3d at 644; *Leonard*, 63 P.3d at 330. Second, the court must determine whether justice requires recognizing the substance of the relationship between the person sought to be held liable and the corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *See Phillips*, 139 P.3d at 644; *McCallum Family L.L.C.*, 221 P.3d at 74. Third, the court must consider whether an equitable result will be achieved by disregarding the corporate form and holding an

individual personally liable for the acts of the business entity. *Phillips*, 139 P.3d at 644; *Sheffield*, 211 P.3d at 721-22. All three prongs of the analysis must be satisfied.

The party seeking to pierce the corporate veil bears the burden of demonstrating, by a preponderance of the evidence, that the veil should be pierced. *McCallum Family L.L.C.*, 221 P.3d at 74. If the veil is not pierced, claims against the individual personally cannot remain.

In his complaint, Lopez presents no facts to support a claim for piercing the corporate veil and allowing his state claims against Lente, in his individual capacity, to proceed. Specifically, Lopez presents no information regarding whether Colorado Native is an "alter ego" of Lente; does not allege that Colorado Native is a fiction used by Lente to perpetrate a fraud; and does not argue that the result will be more equitable if the Court disregards the corporate form to assess Lente's liability for the acts of the entity. That Lopez may present this information later is insufficient to defeat dismissal under Rule 12(b)(6). *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

Thus, taking Lopez's well-pleaded allegations as true, the Court concludes that Lopez's complaint lacks "enough facts to state a [plausible] claim" for piercing the corporate veil and allowing his claims against Lente under the Colorado Wage Claim Act and the Colorado Minimum Wage Act to proceed. *See U.S. ex rel. Conner v. Salina Reg'l Health Cir., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008).

IV.     The FLSA Claim

State law limitations on piercing the corporate form do not necessarily constrict a federal statute regulating interstate commerce for the purpose of effectuating certain social policies. *Pension Ben. Guar. Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1093 (1st Cir. 1983); *see Hodgson v. Okada*, 472 F.2d 965, 968–69 (10th Cir. 1973) (discussing the liability of a Colorado corporation and an individual officer of that corporation under federal law without referencing state law veil-piercing principles). Indeed, federal courts are wary of allowing the corporate form to stymie federal legislative policies. *See, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 630 (1983); *Bangor Punta Operations, Inc. v. Bangor & A. R.R.*, 417 U.S. 703, 713 (1974). For this reason, a federal court, in deciding what veil-piercing test to apply, should "look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form, an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine." *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981).

In FLSA cases, personal liability has often been imposed on individual officers in a corporation without conducting a traditional veil-piercing analysis. *See, e.g., Saavedra v. Lowe's Home Centers, Inc.*, 748 F. Supp. 2d 1273, 1284 (D.N.M. 2010); *Digiore v. State of Ill.*, 962 F. Supp. 1064, 1080 (N.D. Ill. 1997); *Donovan v. Agnew*, 712 F.2d 1509, 1511-12 (1st Cir. 1983)*; Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194–95 (5th Cir. 1983), cert. denied, 463 U.S. 1207 (1983); *Marchak v. Observer Publications, Inc.*, 493 F. Supp. 278, 282 (D.R.I. 1980); *Brennan v. Whatley*, 432 F.

6

Supp. 465, 469 (E.D. Tex. 1977); *Hodgson v. Royal Crown Bottling Co.*, 324 F. Supp. 342, 347 (D. Miss. 1970), aff'd, 465 F.2d 473 (5th Cir. 1972); *Schultz v. Chalk-Fitzgerald Construction Co.*, 309 F. Supp. 1255 (D. Mass. 1970).

Such liability has instead been imposed on the ground that the particular individual falls within the FLSA's definition of "employer" and thus shares statutory obligations with the corporation itself.  *See, e.g. Saavedra*, 748 F. Supp. 2d at 1284 ("A person must be an 'employer' within the meaning of the . . . FLSA to be held individually liable under [the] statute."); *Digiore*, 962 F. Supp. at 1080 (the FLSA contemplates individual liability under term "employer"); *Donovan*, 712 F.2d at 1511 (imposing liability for FLSA violations upon an individual shareholder as an "employer" within the meaning of FLSA Section 3(d), 29 U.S.C. § 203(d)).

This occurs because an "employer" under the FLSA is defined to "include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "Person" includes "an individual," and "employ" includes to "suffer or permit to work."  *Id.*  Courts construe these provisions expansively, *Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*, 78 F. Supp. 2d 1142, 1150 (D. Colo. 1999), and an employee may have several simultaneous employers, *id.*; *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

The Tenth Circuit has considered numerous factors when determining whether an individual is an "employer" under the FLSA, including whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment,

and maintains employment records.  *Hodgson v. Okada*, 472 F.2d 965, 968–69 (10th Cir. 1973); *Mitchell v. Hertzke*, 234 F.2d 183, 189–90 (10th Cir. 1956); *see also Robertson*, 78 F. Supp. 2d at 1150–51; *Herman v. RSR Security Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, ... with an eye to the 'economic reality' presented by the facts of each case."); *Baker v. Flint Eng'g & Const. Co*, 137 F.3d 1436, 1439 (10th Cir. 1998) (applying these factors to assess the employer-employee relationship).  Courts have also looked at the level of operational control the individual has over the company, including whether the individual is "involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee.'" *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012) (quoting *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)).

   In his complaint, Lopez does not provide any facts to support a finding that Lente is an "employer" under the FLSA or that Lente and Lopez (and others similarly-situated) were in an employer-employee relationship as contemplated by the Act.  Lopez merely states that Lente is the "founder, owner, and operator of Next Generation."  (Doc. # 18 ¶ 4.)  Lopez does not flesh out any of the above-mentioned factors or explain Lente's operational control over the company, including whether Lente hired and fired employees; oversaw conditions of employment; set the rate and method of payment; maintained employment records; was involved in the day-to-day operation of the company; or supervised any employees, much less Lopez.  *See Iqbal*, 556 U.S. at 678

(naked assertions without further factual enhancement are insufficient under Rule 12(b)(6)). Lopez references pay records and handwritten timesheets but does not specifically tie them to Lente's role at Next Generation. (*Id.* at ¶¶ 10-12.) Lopez mentions that "Defendants"[3] made no effort to ensure that employees could take breaks but does not assert that Lente personally controlled, or even took part in, setting employee work hours. (*Id.* at ¶ 12.) While it is certainly possible that Lente, as CEO, had some operational control over Next Generation, the Court's function at this junction is not to weigh potential possibilities but to assess the facts alleged in Lopez's complaint to determine whether they are legally sufficient to state a claim for relief. The Court concludes that they are not.

Thus, taking Lopez's well-pleaded allegations as true, the Court concludes that Lopez's complaint lacks "enough facts to state a claim [under the FLSA] that is plausible on its face." *U.S. ex rel. Conner*, 543 F.3d at 1217.

## V. Conclusion

For the foregoing reasons, Defendant Camron Lente's Motion to Dismiss (Doc. # 31) is GRANTED and the claims against him are DISMISSED WITHOUT PREJUDICE.

DATED: November 8, 2016                     BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge

---

[3] Lopez used "Defendants" throughout the complaint to reference Lente and Next Generation collectively.