IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:16-cv-00076-CMA-KLM

RICARDO LOPEZ, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

NEXT GENERATION CONSTRUCTION & ENVIRONMENTAL, LLC, a Colorado limited liability company,

Defendant.

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff Ricardo Lopez and Defendant Next Generation Construction & Environmental, LLC, by and through their undersigned counsel of record, hereby request preliminary approval of the Parties' Settlement Agreement.

**I.    INTRODUCTION**

Plaintiff Ricardo Lopez filed this class action against Defendant on January 12, 2016 in this Court. In the original Class and Collective Action Complaint (Doc. #1), Plaintiff alleged that Defendant Next Generation Construction & Environmental, LLC failed to compensate employees at "time and one-half" their regular rate of pay for all overtime hours worked and failed to ensure the employees received paid rest beaks during their shifts.

On February 10, 2017, the Court certified pursuant to Fed. R. Civ. P. 23 (the "Certification Order") (Doc. #71) the following class: "All current and former hourly field employees who worked for Next Generation in Colorado at any time from January 12,

2013, to December 17, 2016" (the "Certified Class"). The Certification Order appointed Lopez as class representative and Brian D. Gonzales as class counsel.

Following the Certification Order, the parties filed a Stipulated Motion (Doc. #72) for Approval of Class Notice to the Certified Class ("Class Notice"). The Class Notice provided that, to be excluded from the Certified Class, the Certified Class member would need to "opt-out" by completing and timely returning a "Class Action Exclusion Form" on or before 60 days from mailing of the Class Notice.

This Court granted the Stipulated Motion for Approval of Class Notice on February 24, 2017 (Doc. #73) and the Class Notice was disseminated to the Certified Class. Eight members of the Certified Class returned an executed Class Action Exclusion Form.

On November 13, 2017, Plaintiff, by leave of Court granted on November 13, 2017 (Doc. #104), filed a Second Amended Class and Collective Action Complaint (Doc. #105).

Subject to Court approval, the Parties have agreed to settle this action on a class basis for a maximum payment of $127,753.11, inclusive of attorney's and litigation costs. The settlement is the result of extensive negotiations between the parties following significant fact investigation, including written discovery and depositions. As discussed herein, the Settlement meets all the criteria for preliminary approval. To effectuate the settlement and distribute funds to settlement class members, the parties request that the Court (1) preliminarily approve the Settlement Agreement (attached as Exhibit 1), and (2) approve the proposed Notice of Settlement of Class Action Lawsuit (attached as Exhibit 1-A). The settlement is non-reversionary, and there is no claims process.

## II. STATEMENT OF FACTS

### A. Procedural And Litigation History

Plaintiff worked as a hydrovac operator for Next Generation in 2015. On January

12, 2016, he filed the instant action alleging that Defendant failed to provide meal breaks to hourly field employees. On November 13, 2017, Plaintiff, by leave of Court granted on November 13, 2017 (Doc. #104), filed a Second Amended Class and Collective Action Complaint (Doc. #105).

The Parties thoroughly investigated their claims and defenses and engaged in written discovery and depositions. On February 10, 2017, the Court certified a class defined as: "All current and former hourly field employees who worked for Next Generation in Colorado at any time from January 12, 2013 to December 17, 2016."

### B. Background Of Settlement Negotiations

The Parties conducted an investigation of facts during the prosecution of the litigation, which included the formal and informal exchange of information. Counsel for the Parties also analyzed the likelihood of successfully trying the case on a class-wide basis, as well as facts associated with how different individuals do their jobs, in order to determine the likelihood of liability. The Parties further reviewed records, interviewed witnesses, and took depositions. Numerous tele-conferences were held and emails exchanged between representatives of the Parties in order to attempt to resolve the claims. The Parties also conducted a full-day mediation.

Defendant continues to deny any liability or wrongdoings of any kind associated with the claims alleged by Plaintiff, and further denies that, for any purpose other than settling this matter, this action is appropriate for class treatment. Defendant contends that it is impossible to establish commonality of facts that would outweigh individualized inquiries that would support class treatment of the claims of employees at issue, and also claims that Plaintiff could not establish, on a class-wide basis, that all employees were owed damages.

Plaintiff, on the other hand, asserts that Defendant failed to comply with Colorado's Wage Claim Act, §8-4-101, et seq. and Minimum Wage Act, C.R.S. §8-6-101, et seq., as implemented by the Colorado Minimum Wage Order ( (the "Colorado Acts")  Class Counsel understands Defendant's position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof.  Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy, months-long settlement negotiations and mediation and ultimately reached a Settlement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendant's defenses, and the benefits to be received by Class Members.  Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair and reasonable.

**III.   THE PARTIES' SETTLEMENT**

   **A.   The Settlement Terms**

The Settlement Agreement defines the Settlement Class as: "All current and former hourly field employees who worked for Next Generation in Colorado at any time from January 12, 2013 to December 17, 2016."  Ex. 1 at ¶ I.F.

The Settlement provides for a $127,753.11 settlement amount.  Ex. 1 at ¶ IV.E.1.  The Settlement is non-reversionary.  All required payments will be made from this amount, including all payments to Settlement Class Members, attorney's fees and litigation expenses, all payroll and withholding taxes, excluding all employer payroll taxes.  *Id.*  The settlement amount does not include the Settlement Administrator's fees which Defendant will pay as well.  Ex. 1 at ¶¶ IV.B.1 and IV.E.1.

Plaintiff's counsel has agreed to seek no more than $36,234.76 for attorney's fees and litigation costs. Ex. 1 at ¶ IV.E.2. To the extent the Court approves lesser amounts for attorney's fees or litigation costs the unapproved amounts will be allocated to Settlement Class Members on a pro rata basis. Ex. 1 at ¶ IV.E.5.

The Settlement Administrator will mail a notice of preliminary approval to each Settlement Class Member within 15 business days after the Court enters an order preliminarily approving the Settlement, as well as email such notice to Settlement Class Members with email addresses. Ex. 1 at ¶ IV.C.3. There will be a single re-mailing of any undeliverable notices and the Settlement Administrator will work diligently to ensure that any such notices are re-mailed to an updated address. Ex. 1 at ¶ IV.C.6.

Settlement Class Members will have 45 days after mailing of the notice to file objections, and are also provided an opportunity to appear at the final approval hearing to be set by the Court. Ex. 1 at ¶ IV.C.5.

B. **The Settlement Payments**

The amount allocated to settlement payments to the Settlement Class will be distributed on a pro-rata basis based on the total number of work weeks during the relevant class period (January 12, 2013 to December 17, 2016), in which the Settlement Class Member was employed as an hourly field employee. Ex. 1 at ¶ IV.E.6. The settlement payments will be allocated 50 percent to wages and 50 percent to interest. *Id.* Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be donated to a *cy pres* charitable organization designated by Class Counsel. Ex. 1 at ¶ IV.G.3.[1]

---

[1] Likely Towards Justice – a Colorado non-profit dedicated to fighting wage theft.

## IV. ARGUMENT

### A. <u>The Court Should Preliminarily Approve The Settlement</u>

Fed. R. Civ. P. 23(e) provides a class action can be settled only with court approval. Such approval typically involves a two-step process consisting of (1) preliminary approval of the settlement and notice to all class members, and (2) a final fairness hearing. *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013).

Preliminary approval of a class action settlement is thus a provisional step. At the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). A settlement should be preliminarily approved if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted). The standards for preliminary approval are less stringent than at the final approval stage. *In re Crocs*, 2013 WL 4547404, at *3 ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.") (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). Moreover, in evaluating a proposed settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions," because "the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284-85 (D. Colo.

1997) ("[The Court's] role at this stage of the proceeding is not to evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation.'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). *See also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Although the Court will scrutinize these factors more closely at the final approval hearing, they provide a useful guide at the preliminary approval stage. *See Tuten*, 41 F. Supp. 3d at 1007-8. In consideration of these factors, preliminary approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Fairly And Honestly Negotiated

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties engaged in formal discovery regarding the merits of the claims and Defendant' defenses, including written discovery and depositions. The Parties also conducted a full-day mediation.

Through this formal and informal discovery, each party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### 2. Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt

To continue through trial would expose the parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my

experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiff believes that his claims are strong, but recognize that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that he will prevail in demonstrating that he and class members were not paid properly under the Colorado Acts and, therefore, are owed additional compensation. Defendant, however, contends that it fully complied with applicable requirements of the law. Nonetheless, while Defendant believes that its defenses are strong, it recognizes that it may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, the parties dispute whether this case could be tried on a class-wide basis. Finally, the parties dispute the applicability of potential penalties. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the

additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties would need to prepare for and conduct a trial with numerous witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendant which could bankrupt it, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . . . Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

### 4. Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015)

("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. The Court Should Approve The Proposed Notice And Claim Form

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. *See Lucas*, 234 F.R.D. at 696. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 2650037, at *3-4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement

terms, and the binding effect of the settlement on settlement class members).

The proposed Notice, Exhibit 1-A, satisfies all of these elements. First, it explains the nature of the action. Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of all material settlement terms. The Notice explains that Class Members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments. The Notice describes how to object to the settlement, informs Class Members that they will receive a share of the Settlement Amount based on their total number of qualifying workweeks, and explains what constitutes a qualifying workweek.

Third, the Notice advises Class Members that they can examine the Settlement Agreement and all other pleadings from this lawsuit through the Court. Finally, Class Members are provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense.

The proposed manner of notice and timetable for further proceedings are also reasonable. Notice will be sent to Class Members by first-class mail to their last known address with 15 days after the Settlement is preliminarily approved, and will also be sent via email to those Settlement Class Members with last known email addresses. Notices returned as undeliverable will be re-mailed using the most recent contact information from available databases.

Class Members will have a reasonable amount of time, 45 days from the date the notice is mailed, to object to the Settlement or mail an opt-out request. Courts have routinely found a 45-day period to be reasonable and have even approved shorter periods. *See DeJulius*, 429 F.3d at 945-47 (32 days); *Bryant v. Act Fast Delivery of Colo.,*

*Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days).

The Parties will file a Joint Motion for Final Approval of the Settlement within 30 days after the end of the objections period, so as to permit compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d). The parties request that thereafter the Court hold a fairness hearing for the purpose of determining whether to grant final approval of the Settlement.

## V. CONCLUSION

The proposed Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed Settlement, sign the proposed Order, approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement, and set a date for a final approval hearing.

Dated this 21st day of March, 2019.

| | |
|---|---|
| *s/ Brian D. Gonzales* | *s/ Thomas J. Harrison* |
| Brian D. Gonzales | Thomas J. Harrison |
| The Law Offices of | 1885 South Quebec Way, Suite E18 |
| Brian D. Gonzales, PLLC | Denver, CO 80231 |
| 2580 East Harmony Road, Suite 201 | Telephone: (720) 585-8320 |
| Fort Collins, CO 80528 | Tomjh3@gmail.com |
| Telephone: (970) 214-0562 | |
| bgonzales@coloradowagelaw.com | |

J. Forester
Forester Haynie PLLC
1701 N. Market Street, Suite 210
Dallas, Texas 75202
Telephone: (214) 210-2100
Facsimile: (214) 346-5909
jay@foresterhaynie.com

United States District Court
District of Colorado

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

    Thomas J Harrison
    Tomjh3@gmail.com

    Brian Gonzales
    BGonzales@Coloradowagelaw.com

    Jay Forester
    jforester.law@gmail.com

And I hereby certify that I have mailed the document to the following non CM.ECF participants in the manner (mail, hand delivery, etc.) indicated by the non participant's name.

    NONE

Dated: March 21, 2019

/s/ Thomas J Harrison_____
Thomas J. Harrison